# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

CASEY M. R.,          )
           )
       *Plaintiff*    )
           )
*v.*          )     *No. 1:20-cv-00453-JDL*
           )
KILOLO KIJAKAZI,     )
*Acting Commissioner of Social Security,*[1]  )
           )
      *Defendant*   )

## REPORT AND RECOMMENDED DECISION[2]

This Social Security Disability (SSD) and Supplemental Security Income (SSI) appeal raises the question of whether the administrative law judge (ALJ) supportably found the plaintiff capable of performing work existing in significant numbers in the national economy.[3] The plaintiff seeks remand on the basis that the ALJ assessed a residual functional capacity (RFC) unsupported by substantial evidence. *See* Statement of Specific Errors ("Statement of Errors") (ECF No. 24). I agree and, accordingly, recommend that the court vacate the commissioner's decision and remand this case for further proceedings consistent herewith.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Sec'y of Health & Hum. Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi is substituted as the defendant in this matter.

[2] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

[3] I am treating this as an SSD and SSI appeal despite the plaintiff's suggestion in her brief that her SSD claim was obviated when she amended her alleged onset date to September 27, 2018, which, according to her, was after her date last insured (DLI) of September 30, 2016. *See* Statement of Errors at 1. The ALJ actually found that the plaintiff's DLI was June 30, 2020. *See* Finding 1, Record at 23. The record is unclear as to which DLI is correct, *see, e.g.*, *id.* at 67, 82, 296, but nothing in this appeal turns on the issue, and the ALJ can resolve it on remand.

found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through June 30, 2020, Finding 1, Record at 23[4]; that she had the severe impairment of degenerative disc disease of the lumbar spine, Finding 3, *id*. at 24; that she had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that she was limited to four hours of standing and/or walking in an eight-hour day, had to be allowed to change positions for three to five minutes hourly, could frequently push or pull with the bilateral lower extremities, frequently climb ramps and stairs, and occasionally balance, stoop, kneel, crouch, and crawl but could not climb ladders, ropes, or scaffolds, and had to avoid unprotected heights and slippery surfaces, Finding 5, *id*. at 25-26; that, considering her age (31 years old, defined as a younger individual, on her alleged onset date of disability), education (limited), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 7-10, *id*. at 31[5]; and that she, therefore, had not been disabled from September 27, 2018, her amended alleged onset date of disability, through the date of the decision, March 26, 2020, Finding 11, *id*. at 32. The Appeals Council declined to review the decision, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Sec'y of Health & Hum. Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Sec'y of Health & Hum. Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be

---

[4] *See supra* n.3.
[5] The plaintiff originally alleged that she became disabled on September 15, 2015, at which time she was 31 years old. *See* Record at 21. However, as the ALJ recognized in his decision, the plaintiff amended her alleged disability onset date to September 27, 2018, when she would have been 34. *See id*. at 21, 296. Nothing turns on the ALJ's minor misstatement. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c) (defining a younger person as someone under the age of 50).

2

supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Hum. Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than any past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Hum. Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

The plaintiff filed applications for benefits in 2018, alleging disability beginning in 2015. *See* Record at 158, 165. Her claims were denied at the initial level in November 2018 after an agency nonexamining consultant determined that she had no medically determinable impairments. *See id.* at 67-69. At the reconsideration level, the plaintiff's claims were reviewed by Archibald Green, D.O., in April 2019. *See id.* at 82-88. In contrast to the previous consultant, Dr. Green found that the plaintiff suffered from the severe impairment of "Disorders of Back (Discogenic and Degenerative)" and noted that she had undergone a discectomy/laminotomy surgery on January 15, 2019, to address a large, calcified disc herniation caused by degenerative disc disease of the lumbar spine. *See id.* at 82-86. He assessed the plaintiff's RFC for the period from August 28, 2018, to January 14, 2019 (the day prior to her back surgery), and then projected what her RFC would be on January 15, 2020 (one year after her back surgery). *See id.* at 84-87.

After her claims were denied at the reconsideration level, the plaintiff requested a hearing before an ALJ. *See id.* at 108-09. At the hearing level, the plaintiff amended her alleged onset

date of disability to September 27, 2018.  *See id.* at 21, 296.  In his decision following the hearing, the ALJ adopted an RFC assessment that largely tracked Dr. Green's first RFC assessment. *Compare* Finding 5, *id.* at 25-26 *with id.* at 84-85.  The ALJ explained:

> The undersigned has considered the State agency assessment by Archibald Green, D.O.  Dr. Green found with respect to through January 14, 2019, that the [plaintiff] could perform light work, sit for four hours in an eight-hour workday, frequently push or pull with the lower extremities, and frequently balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, but needed to change positions for three to five minutes hourly, was unable to climb ladders, ropes, or scaffolds, and needed to avoid concentrated exposure to unprotected heights and slippery surfaces. Dr. Green provided an explanation in support of his conclusions.  This assessment is consistent with the evidence as a whole.  While lumbar tenderness, an antalgic gait, 4/5 left leg strength, and positive straight leg raising tests have been noted, examinations have typically demonstrated normal range of motion and ability to heel/toe walk, negative Hoffman's, Babinski's, Faber's, Patrick's, Gaenslen's, distraction, and compression tests, and no clonus, scoliosis, or motor or sensory loss.  Although she did require surgery on her lumbar spine in January 2019, the [plaintiff] has primarily received only minimal conservative treatment in the form of a few epidural steroid injections, and pain medications prior to and since then. This assessment is also consistent with the . . . reports of improvement and the [plaintiff's] reported activities of daily living.  Dr. Green did not examine the [plaintiff], but did review the evidence available at the time and is familiar with the Social Security Administration's rules.  In light of the foregoing, the undersigned has found this assessment to be persuasive.  Although Green assessed a second less restrictive [RFC] for light work in anticipation of improvement in the [plaintiff]'s back impairment within a year of her January 14, 2019 surgery, the undersigned has interpreted the evidence in a light most favorable to the [plaintiff] and found her to be as limited as set forth in the first assessment at all times relevant to this decision.[6]

*Id.* at 29-30 (citations omitted).

The plaintiff challenges the ALJ's reliance on Dr. Green's opinion, noting that "Dr. Green did not assess an RFC for the period beginning with the date of surgery, January 15, 2019, through January 15, 2020."  Statement of Errors at 6.  She argues that the only reasonable explanation for this gap is that "Dr. Green believed that [she] did not have the ability to perform any work on a full-time basis for a year beginning with the date of surgery[,]" which she suggests would satisfy

---

[6] As previously noted, the plaintiff's surgery was actually on January 15, 2019.  *See* Record at 86.

the duration requirement necessary for a finding of disability. *Id.* at 6 & n.2. Based on the yearlong gap in Dr. Green's opinion, she also argues that the ALJ erred in adopting Dr. Green's pre-surgery RFC for the entire relevant time period. *See id.* at 12.

The commissioner, on the other hand, argues that there is a benign explanation for Dr. Green's bifurcated RFC assessment. *See* Defendant's Opposition to Plaintiff's Itemized Statement of Errors ("Opposition") (ECF No. 26) at 4 n.1. She contends in her brief that Dr. Green was merely following the directions of the Program Operations Manual System (POMS) and that, in any event, "[n]othing in this case turn[s] on" the issue of the bifurcated RFC because "the ALJ indisputably adopted Dr. Green's most limiting assessment of Plaintiff's functioning." *Id.* (citing POMS §§ DI 24510.020, DI 24510.050(C)(I)(f)). At oral argument, counsel for the commissioner further explained that, in accordance with those POMS provisions, Dr. Green assessed an RFC prior to the plaintiff's surgery, assumed a period of convalescence following that surgery, and then projected the plaintiff's RFC 12 months after her surgery and convalescence.

The plaintiff has the better argument.

POMS § DI 24510.020 directs that a claimant's "RFC must be projected 12 months from the onset date when [(1)] the case is adjudicated within 12 months of onset, [(2)] the severity of the impairment is disabling at the time of adjudication, and [(3)] the impairment(s) will not meet or equal a listed impairment, but will continue to be severe 12 months from onset." POMS § DI 24510.020(A) (emphasis omitted). The cited subsection of POMS § DI 24510.050 merely describes what title block to use for an RFC assessment – *e.g.*, "Current Evaluation" or "Date 12 Months After Onset." *Id.* § DI 24510.050(C)(I)(f). Although these sections of the POMS may help explain why Dr. Green assessed two separate RFC assessments, they do not reference or delineate an "assumed period of convalescence" or otherwise explain why Dr. Green did not assess

5

an RFC for the yearlong period following the plaintiff's surgery. If anything, POMS § DI 245101.020 indicates that Dr. Green believed that the plaintiff's degenerative disc disease was disabling at the time he rendered his opinion in April 2019, which lends credence to the plaintiff's argument.

I am also unpersuaded by the commissioner's suggestion that the gap between Dr. Green's RFC assessments does not matter because the ALJ adopted the more restrictive of the two assessments. *See* Opposition at 4 n.1. As an initial matter, this argument ignores the plaintiff's point that, if she were disabled for a year after her surgery, she might have met the duration requirement for a closed period of disability. *See* Statement of Errors at 6 n.2; *Simmons v. Comm'r of Soc. Sec. Admin.*, Case No. 8:19-cv-1958-T-MCR, 2020 WL 5627464, at *4 (M.D. Fla. Sept. 21, 2020) (remanding when there was "evidence in the record that" might have "support[ed] a closed period of disability lasting 12 months, but the ALJ failed to consider or discuss [the claimant]'s potential entitlement to a closed period of disability" (citation and internal quotation marks omitted)).

More importantly, the ALJ simply did not grapple with the issue of the gap when he adopted the more restrictive of Dr. Green's two RFC assessments for the entire relevant period, including the yearlong period for which Dr. Green did not assess an RFC. "[A] reviewing court cannot affirm an agency's decision on the basis of a *post hoc* rationalization but must affirm, if at all, on the basis of a rationale *actually articulated* by the agency decision-maker." *Clark v. Astrue*, Civil No. 09-390-P-H, 2010 WL 2924237, at *3 (D. Me. July 19, 2010) (rec. dec., *aff'd* Aug. 9, 2010) (emphasis added)). The ALJ's failure to explain whether or how he interpreted the gap between Dr. Green's RFC assessments leaves me unable to determine whether he improperly ignored the issue and, if he considered it, whether he arrived at his decision *via* an acceptable

analytical pathway, requiring reversal and remand.  *See, e.g.*, *Picard v. Berryhill*, No. 2:16-cv-00636-JHR, 2018 WL 1370681, at *3 (D. Me. Mar. 16, 2018) ("[W]hen failures to explicate and/or even address material issues prevent a reviewing court from concluding that the ALJ reached a supportable result *via* an acceptable pathway," reversal and remand are warranted.); *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) ("The ALJ's findings of fact are conclusive when supported by substantial evidence, but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." (citations omitted)).

## II.  Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **VACATED** and the case **REMANDED** for proceedings consistent herewith.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof.   A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 30th day of January, 2022.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge